IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| IN THE MATTER OF: | ) |
| | ) |
| JOHN RAYMOND GIDDENS | ) CHAPTER 7 CASE NO.: 09-41686 –LWD |
| | ) |
| DEBTOR | ) |

### APPLICATION FOR LEAVE TO SELL REAL PROPERTY AT PRIVATE SALE

1. The undersigned, **BENJAMIN R. ROACH,** having been duly appointed trustee in the captioned case, does hereby apply to the Court for leave to sell at **PRIVATE SALE** the following described parcel of improved real property:

   ALL THOSE CERTAIN LOTS, TRACTS OR PARCEL OF LAND SITUATE, LYING AND BEING IN CHATHAM COUNTY, GEORGIA, AND KNOWN AND DESIGNATED ON A MAP OF SHANGRI-LA MADE BY ROBERT D GIGNILLIANT JR, CHATHAM COUNTY SURVEYOR, MARCH 1944, WHICH IS RECORDED IN THE OFFICE OF THE CLERK OF THE SUPERIOR COURT OF CHATHAM COUNTY, GEORGIA, IN SUBDIVISION MAP BOOK "A" PAGE 72 AS LOTS 9 AND 10, SAID LOTS BEING CONTIGUOUS AND HAVING A COMBINED FRONTAGE ON THE WEST SIDE OF THE WHITE BLUFF ROAD OF 205.25 FEET WITH A DEPTH ALONG THE NORTHERN LINE OF LOT 9 OF 312.8 FEET AND DEPTH ALONG THE SOUTHERN LINE OF LOT 10 OF 318.2 FEET AND BEING BOUNDED AS WHOLE ON THE NORTH BY LOT 8 OF SAID SUBDIVISION, ON THE EAST BY THE WHITE BLUFF ROAD, ON THE SOUTH BY THE BOUNDARY LINE OF SAID SUBDIVISION AND MAGNOLIA GARDENS, AND ON THE WEST BY LOT 12 OF SAID SUBDIVISION. Said property being known as 10515 White Bluff Road, Savannah, GA 31406, according to the present numbering system in Chatham County.

2. Trustee requests Court approval to sell this property at **PRIVATE SALE** to Wakley Properties LLC, for $350,000.00, cash, free and clear of liens, with valid liens only to attach to the proceeds of the sale.

3. Trustee believes the property to be encumbered as follows:

   a. First Deed to Secure Debt in favor of BB&T, securing an indebtedness of approximately $236,000.00. (The exact amount due the mortgage holder will be determined and paid in full at closing).

   b. Second Deed to Secure Debt in Favor of Queensborough National Bank & Trust, securing an indebtedness of approximately $40,000.00. (The exact amount due the mortgage holder will be determined and paid in full at closing).

   c. Ad valorem taxes, if any, due Chatham County, Georgia and the City of Savannah, Georgia. (Any amount due Chatham County and the City of Savannah has not yet been determined so that the amount claimed by Chatham County and the City of Savannah will be escrowed by the closing attorney at closing.)

4. Trustee further requests that notice be given to creditors and parties in interest of this application for leave to sell and that the Court direct that objections and requests for a hearing before the Bankruptcy Judge, if any, to the sale as proposed, must be in writing and filed with the Clerk of the Bankruptcy Court, Post Office Box 8347, Savannah, Georgia 31412, and served upon the trustee, Benjamin R. Roach, at 423 Bull Street, Savannah, Georgia 31401, within such time as the Court shall fix, and further that any objections not timely filed and served be deemed waived.

5. A copy of the sales contract underlying the proposed sale is attached hereto as Exhibit "A" and the terms and conditions contained therein are hereby incorporated

by reference into this application. It is anticipated that the sales contract will be amended to provide that buyer takes possession thirty days from closing, and that within that thirty day period the Debtor will remove his personal property from the premises at his expense.

6. Trustee further requests that the Court in its discretion take such other action or provide such other relief as it deems equitable or appropriate.

**DATED** at Savannah, Georgia, this 17 day of December, 2009.

                                                 Kathleen Horne,
                                                 Georgia Bar No. 367456
                                                 Attorney for the Trustee

INGLESBY, FALLIGANT, HORNE, COURINGTON & CHISHOLM, P.C.
Post Office Box 1368
Savannah, Georgia 31402-1368
(912) 232-7000

# EXHIBIT A

# COMMERCIAL PURCHASE AND SALE AGREEMENT

Offer Date: _____December 14, 2009_____

Georgia Association of REALTORS

2009 Printing

1. **Purchase and Sale.** The undersigned buyer ("Buyer") agrees to buy and the undersigned seller ("Seller") agrees to sell the Property with the following address: _____10515 WHITE BLUFF_____, City _____SAVANNAH_____, County _____CHATHAM_____, Georgia, Zip Code _____31406_____, TAXID/PIN # _____2-0848-05-008_____ together with all fixtures, landscaping, improvements, and appurtenances (except those identified in any Seller's Property Disclosure Statement attached hereto as not remaining with the Property) and as more particularly described in the Legal Description Paragraph below (all of which is hereinafter collectively referred to as "Property").

2. **Legal Description.** [Select Section A or B below. The section not marked shall not be a part of this Agreement.]
   - ☒ A. The legal description of the Property is attached as an exhibit hereto.
   - ☐ B. The full legal description of the Property is the same as is recorded in the land records of the county in which the Property is located and is incorporated herein by reference. The legal description of the Property is more specifically described below and can be found in said land records in the following deed book or plat book, if filled in below:
   
   Land Lot(s) _____ of the _____ District, _____ Section/ GMD,
   Lot _____, Block _____, Unit _____, Phase/Section _____ of
   _____ Subdivision/Development, _____CHATHAM_____
   County, Georgia as recorded in:
   - ☐ 1. Plat Book _____, Page _____, et. seq.;
   
   OR
   - ☐ 2. Deed Book _____, Page _____, et. seq.

3. **Purchase Price and Method of Payment.** At closing, Buyer agrees to pay Seller the purchase price of the Property of $ _____350,000.00_____ _____THREE HUNDRED AND FIFTY THOUSAND_____ U.S. Dollars; cash, wire transfer of immediately available funds, or a cashier's check issued for the closing by a federally insured bank, savings bank, savings and loan association or credit union where the funds are immediately available. The above forms of payment shall be deemed to be the equivalent of Buyer paying all cash at closing which shall be the method of payment.

4. **Due Diligence.** Buyer has paid Seller the sum of $25.00, the receipt of which is hereby acknowledged by Seller, as option money for Buyer having the right to terminate this agreement during the Due Diligence Period. Prior to closing, Buyer and Buyer's agents shall have the right to enter upon Property at Buyer's expense, and at reasonable times, to inspect, survey, examine, and test Property as Buyer may deem necessary as part of Buyer's acquisition of Property. Buyer shall indemnify and hold Seller and all Brokers harmless from and against any and all claims, injuries, and damages to persons and/or property arising out of or related to the exercise of Buyer's rights hereunder. Buyer shall have ___0___ days from the Binding Agreement Date ("Due Diligence Period") to evaluate Property, the feasibility of the transaction, the availability and cost of financing, and any other matter of concern to Buyer. During the Due Diligence Period, Buyer shall have the right to terminate this Agreement upon notice to Seller if Buyer determines, based on an evaluation of the above, that it is not desirable to proceed with the transaction. In such event, Holder shall promptly refund Buyer's earnest money in accordance with the earnest money paragraph above. Within ___N/A___ days from the Binding Agreement Date, Seller shall deliver to Buyer copies of the materials concerning Property referenced in Exhibit "B" (collectively, "Due Diligence Materials"), which materials shall be promptly returned by Buyer if this Agreement does not close for any reason. If Buyer fails to timely notify Seller that it is not proceeding with the transaction, Buyer shall waive its rights to terminate this Agreement pursuant to this paragraph.

5. **Earnest Money.**
   A. **Receipt:** Buyer has paid to _____BEN ROACH (TRUSTEE)_____ ("Holder") earnest money of $_____10,000.00_____ check, which has been received by Holder. The earnest money shall be deposited in Holder's escrow/trust account (with Holder retaining the interest if the account is interest bearing) within 5 (five) banking days from the Binding Agreement Date. If Buyer writes a check for earnest money and the same is deposited into Holder's escrow/trust account, Holder shall not be required to return the earnest money until the check has cleared the account on which the check was written. In the event any earnest money check is dishonored for any reason by the bank upon which it is drawn, Holder shall promptly give notice to Buyer and Seller. Buyer shall have 3 (three) banking days after notice to deliver good funds to Holder. In the event Buyer does not timely deliver good funds, Seller shall have the right to terminate this Agreement upon written notice to Buyer.
   
   B. **Entitlement to Earnest Money:** Subject to the Disbursement of earnest money paragraph below:
      1. Buyer shall be entitled to the earnest money upon: (a) failure of the parties to enter into a binding agreement; (b) failure of any contingency or condition to which this Agreement is subject; (c) termination of this Agreement due to the default of Seller; (d) the termination of this Agreement in accordance with a specific right to terminate set forth in the Agreement; or (e) upon the closing of Property.
      2. Seller shall be entitled to the earnest money if this Agreement is terminated due to the default of Buyer. In such event, Holder may pay the earnest money to Seller by check, which if accepted and deposited by Seller, shall constitute liquidated damages in full settlement of all claims of Seller. It is agreed to by the parties that such liquidated damages are not a penalty and are a good faith estimate of Seller's actual damages, which damages are difficult to ascertain.
   
   C. **Disbursement of Earnest Money:** Holder shall disburse Earnest Money only as follows: (a) at Closing; (b) upon a subsequent written agreement signed by Buyer and Seller; (c) as set forth below in the event of a dispute regarding earnest money; or (d) the failure of the parties to enter into a binding agreement (where there is no dispute over the formation or enforceability of the Agreement). No party shall seek damages from Holder, nor shall Holder be liable for any such damages, for any matter arising out of or related to the performance of Holder's duties hereunder.

D. **Disputes Regarding Earnest Money:** In the event Buyer or Seller notifies Holder of a dispute regarding the disposition of Earnest Money that Holder cannot resolve, Holder shall settle the dispute as follows: *[Select Section 1 or 2 below. The section not selected is not part of this Agreement.]*

☒ 1. **Reasonable Interpretation by Holder.** Holder may disburse the earnest money upon a reasonable interpretation of the Agreement, provided that Holder first gives all parties 15 (fifteen) days notice stating to whom and why the disbursement will be made. Any party may object to the proposed disbursement by giving written notice of the same to Holder within the 15 (fifteen) day notice period. Objections not timely made in writing shall be deemed waived. If Holder receives an objection and after considering it, decides to disburse the earnest money as originally proposed, Holder may do so and send notice to the parties of Holder's action. If Holder decides to modify its proposed disbursement, Holder shall first send a new 15 (fifteen) day notice to the parties stating the rationale for the modification and to whom the disbursement will now be made. If there is a dispute over the earnest money which the parties cannot resolve after a reasonable period of time, and where Holder has a bona fide question as to who is entitled to the earnest money, Broker may interplead the earnest money into a court of competent jurisdiction. Holder shall be reimbursed for and may deduct from any funds interpleaded, its costs and expenses, including reasonable attorney's fees actually incurred. The prevailing defendant in the interpleader lawsuit shall be entitled to collect its attorney's fees and court costs and the amount deducted by Holder from the non-prevailing defendant.

☐ 2. **Arbitration.** Buyer and Seller agree that any earnest money dispute shall be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association. Buyer and Seller agree to engage _____N/A_____ or another arbitrator mutually agreeable to the parties ("Arbitrator"), to settle the earnest money dispute. The award of the Arbitrator shall be final and binding upon the parties hereto, and Holder shall promptly disburse the earnest money in accordance with said award. The costs of any such arbitration shall be shared equally between the Buyer and Seller and shall be promptly paid directly to the Arbitrator. Not withstanding any provisions to the contrary contained herein, if the parties have not selected an Arbitrator above and cannot agree on an Arbitrator to resolve any dispute within 30 (thirty) days from the beginning of the earnest money dispute, Holder shall have the right to interplead the earnest money in accordance with paragraph 4.D (1) above.

6. **Closing and Possession.** This transaction shall be closed on the date of _____January 15, 2010_____ or on such other date as may be agreed to in writing by the parties by the law firm of _____RUBNITZ AND CLEMENTS_____. The Buyer agrees that the Seller will retain possession of the Property through: *[Select A. or B. below. Section not checked shall not be a part of this agreement.]*
   ☒ A. Closing; or
   ☐ B. Until _____.

7. **Seller's Obligations at Closing:** At Closing, Seller shall deliver to Buyer: (a) a Closing Statement; (b) Limited Warranty Deed; (c) FIRPTA Affidavit (indicating that Seller is not a "foreign person" or "foreign corporation" as that term is defined in Section 1445(f)(3) of the Internal Revenue Code of 1986); (d) an Affidavit of Seller's Residence Regarding Georgia Withholding Tax, establishing that Seller is exempt from the requirements of O.C.G.A. § 48-7-128, the Georgia Withholding Statute (or Affidavit of Exemption or Affidavit of Seller's Gain, if withholding is required); (e) a transfer tax declaration form properly signed and executed by Seller; and, (f) all documents which Seller must execute under the terms of this Agreement to cause the Title Company to deliver to Buyer the Title Policy, including, without limitation, a title affidavit from Seller to Buyer and to the Title Company in the form customarily used in Georgia commercial real estate transactions so as to enable the Title Company to issue Buyer the Title Policy with all standard exceptions deleted and subject only to the Permitted Exceptions and evidence reasonably satisfactory to Title Company of its due and proper authority and power to perform its obligations hereunder. In addition, Seller shall deliver to Buyer at Closing all documents/items indicated in Exhibit "C", if any. (All documents to be delivered by Seller under this paragraph, including all documents/items indicated in Exhibit "C" are collectively "Seller's Closing Documents".)

8. **Conditions to Closing.**
   A. **Conditions in Favor of Buyer:** The obligation of Buyer to consummate the transaction contemplated herein is conditioned upon the following conditions precedent as of the Closing Date:
      1. All representations and warranties of Seller made herein shall remain true and correct;
      2. Seller shall have performed all of the covenants undertaken by Seller in this Agreement to be performed by Seller at or prior to Closing;
      3. Seller shall have delivered to the Buyer properly executed originals of Seller's Closing Documents;
      4. There shall have been no material adverse change in the physical condition of Property, except as otherwise provided for in this Agreement; and
      5. The issuance at Closing of the Title Policy (or marked binder), with all standard exceptions deleted and subject only to the Permitted Exceptions.
   B. **Conditions in Favor of Seller:** The obligation of Seller to consummate the transaction contemplated herein is conditioned upon the following conditions precedent as of the Closing Date:
      1. All representations and warranties of Buyer made herein shall remain true and correct;
      2. Buyer shall have performed all of the covenants undertaken by Buyer in this Agreement to be performed by Buyer at or prior to Closing; and
      3. Buyer shall have: (a) delivered to the Seller properly executed originals of the transfer tax declaration form, title policy documents, closing statement, and any other documents identified in Exhibit "C" that require Buyer's signature; and, (b) paid the Purchase Price, plus or minus prorations and adjustments, to Seller.

9. **Costs.**
   A. **Seller's Costs:** Seller shall pay the cost of recording any title curative document, including, without limitation, satisfactions of deeds to secure debt, quitclaim deeds and financing statement terminations; all transfer taxes; all deed recording fees; the fees of Seller's counsel.
   B. **Buyer's Costs:** Buyer shall pay the cost of Buyer's counsel and consultants; any costs in connection with Buyer's inspection of Property and any costs associated with obtaining financing for the acquisition of Property (including any intangibles tax, all deed recording fees and the cost of recording Buyer's loan documents).

C. **Additional Costs:** In addition to the costs identified above, the following costs shall be paid by the parties hereto, as indicated below:

| Item to be Paid | Paid by Seller | Paid by Buyer |
|---|---|---|
| Survey | ☐ | ☒ |
| Title Examination | ☒ | ☐ |
| Premium for Owner's Title Insurance Policy | ☐ | ☒ |
| Other: _____ | ☐ | ☐ |

10. **Taxes and Prorations.** Real estate taxes on Property for the calendar year in which the Closing takes place shall be prorated as of 12:01 a.m. on the Closing Date. Seller shall be responsible (even after Closing) for paying all taxes (including previous reassessments) on Property for the time period during which Seller owned Property. In the event real estate taxes are paid at closing based upon an estimated tax bill or tax bill under appeal, Buyer and Seller upon the issuance of the actual tax bill or the appeal being resolved shall promptly make any financial adjustments between themselves as are necessary to correctly prorate the tax bill. This subparagraph shall survive the closing. In addition, the following items shall also be prorated as of 12:01 a.m. on the Closing Date [*Select only those items that apply to this transaction; the items not selected shall not apply to this Agreement*]:

    ☐ Utilities           ☐ Leasing Commissions        ☐ Service Contracts
    ☐ Rents              ☐ Tenant Improvement Costs   ☐ Other: _____

11. **Title.**
    A. **Warranties of Seller.** Seller warrants that at Closing, Seller shall convey good and marketable, fee simple title to Property to Buyer, subject only to the following exemptions ("Permitted Exception"):
        1. Liens for ad valorem taxes not yet due and payable;
        2. Those exceptions to which Buyer does not object or which Buyer waives in accordance with the Title Objections paragraph below. "Good and marketable, fee simple title" with respect to Property shall be such title: (a) as is classified as "marketable" under the Title Standards of the State Bar of Georgia; and, (b) as is acceptable to and insurable by a title insurance company doing business in Georgia ("Title Company"), at standard rates on an American Land Title Association Owner's Policy ("Title Policy").
    B. **Title Objections.** Buyer shall have __7__ days from the Binding Agreement Date in which to furnish Seller with a written statement of any title objections, UCC-1 or UCC-2 Financing Statements, and encroachments and other facts affecting the marketability of Property as revealed by a current title examination and survey. Seller shall have __5__ days from the receipt of such objections (the "Title Cure Period") to cure all valid title objections. Seller shall satisfy any existing liens or monetary encumbrances identified by Buyer as title objections which may be satisfied by the payment of a sum certain prior to or at Closing. Except for Seller's obligations in the preceding sentence, if Seller fails to cure any other valid title objections of Buyer within the Title Cure Period (and fails to provide Buyer with evidence of Seller's cure satisfactory to Buyer and to the Title Company), then within 5 (five) days of the expiration of the Title Cure Period, Buyer may, as Buyer's sole remedies: (1) rescind the transaction contemplated hereby, in which case, Buyer shall be entitled to the return of Buyer's earnest money; (2) waive any such objections and elect to close the transaction contemplated hereby irrespective of such title objections and without reduction of the Purchase Price; or, (3) extend the Closing Date for a period of time not to exceed 15 (fifteen) days to allow Seller further time to cure such valid title objections. Failure to act in a timely manner under this paragraph shall constitute a waiver of Buyer's rights hereunder. Buyer shall have the right to re-examine title prior to Closing and notify Seller at Closing of any title objections which appear of record after the date of Buyer's initial title examination and before Closing.

12. **Destruction of Property Prior to Closing.** If the Property is destroyed or substantially destroyed prior to Closing, Seller shall give Buyer prompt notice thereof, which notice shall include Seller's reasonable estimate of: (1) the cost to restore and repair the damage; (2) the amount of insurance proceeds, if any, available for the same; and (3) whether the damage will be repaired prior to Closing. Upon notice to Seller, Buyer may terminate this Agreement within 7 (seven) days of receiving such notice from Seller. If Buyer does not terminate this Agreement, Buyer shall be deemed to have accepted Property with the damage and shall receive at Closing: (1) any insurance proceeds which have been paid to Seller but not yet spent to repair the damage; and (2) an assignment of all unpaid insurance proceeds on the claim.

13. **Representations and Warranties.**
    A. **Seller's Representations and Warranties:** As of the Binding Agreement Date and the Closing Date, Seller makes the representations and warranties to Buyer, if any, as indicated in Exhibit "D", if attached.
    B. **Buyer's Representations and Warranties:** As of the Binding Agreement Date and the Closing Date, Buyer represents and warrants to Seller that Buyer has the right, power and authority to enter into this Agreement and to consummate the transaction contemplated by the terms and conditions of this Agreement; and the persons executing this Agreement on behalf of Buyer have been duly and validly authorized by Buyer to execute and deliver this Agreement and shall have the right, power and authority to enter into this Agreement and bind Buyer.

14. **Agency and Brokerage.**
    A. **Agency Disclosure:** In this Agreement, the term "Broker" shall mean a licensed Georgia real estate broker or brokerage firm and, where the context would indicate, the broker's affiliated licensees. No Broker in this transaction shall owe any duty to Buyer or Seller greater than what is set forth in their brokerage engagements and the Brokerage Relationships in Real Estate Transactions Act, O.C.G.A. § 10-6A-1 et. seq.;
        1. **No Agency Relationship.** Buyer and Seller acknowledge that, if they are not represented by a Broker, they are each solely responsible for protecting their own interests, and that Broker's role is limited to performing ministerial acts for that party.
        2. **Listing Broker.** Broker working with the Seller is identified on the signature page as the "Listing Broker"; and said Broker is ☐ OR is not ☐ representing Seller;
        3. **Selling Broker.** Broker working with Buyer (including in transactions where Broker is representing Seller) is identified on the signature page as "Selling Broker;" and said Broker is ☒ OR is not ☐ representing Buyer; and
        4. **Dual Agency or Designated Agency.** If Buyer and Seller are both being represented by the same Broker, a relationship of either designated agency ☐ OR dual agency ☐ shall exist.

   a. **Dual Agency Disclosure.** *[Applicable only if dual agency has been selected above.]*
   Buyer and Seller are aware that Broker is acting as a dual agent in this transaction and consent to the same. Buyer and Seller have been advised that:
   (1) In serving as a dual agent, Broker is representing two clients whose interests are or at times could be different or even adverse;
   (2) Broker will disclose all adverse, material facts relevant to the transaction and actually known to the dual agent to all parties in the transaction except for information made confidential by request or instructions from each client which is not otherwise required to be disclosed by law;
   (3) Buyer and Seller do not have to consent to dual agency and, the consent of Buyer and Seller to dual agency has been given voluntarily and the parties have read and understand their brokerage engagement agreements.
   (4) Notwithstanding any provision to the contrary contained herein, Buyer and Seller each hereby direct Broker, while acting as a dual agent, to keep confidential and not reveal to the other party any information which could materially and adversely affect their negotiating position.
   b. **Designated Agency Assignment.** *[Applicable only if the designated agency has been selected above.]*
   Broker has assigned _____N/A_____ to work exclusively with Buyer as Buyer's designated agent and _____N/A_____ to work exclusively with Seller as Seller's designated agent. Each designated agent shall exclusively represent the party to whom each has been assigned as a client and shall not represent in this transaction the client assigned to the other designated agent.

B. **Brokerage:** Seller has agreed to pay Listing Broker(s) a real estate commission pursuant to that certain brokerage engagement agreement entered into between the parties and incorporated herein by reference ("Listing Agreement"). Pursuant to the terms of the Listing Agreement, the Listing Broker has agreed to share that commission with the Selling Broker.

The closing attorney is hereby authorized and directed to pay the Broker(s) at closing, their respective commissions out of the proceeds of the sale. If the sale proceeds are insufficient to pay the full commission, the party owing the commission shall pay any shortfall at closing. If more than one Broker is involved in the transaction, the closing attorney is directed to pay each Broker its respective portion of said commission. The acceptance by the Broker(s) of a partial real estate commission at the closing shall not relieve the Seller of the obligation to pay the remainder thereof after the closing unless the Broker(s) have expressly and in writing agreed to accept the lesser amount in full satisfaction of the Broker(s) claim to a commission.

C. **Material Relationship Disclosure:** Brokers and/or their affiliated licensees have the following material relationship(s) with either Buyer or Seller as follows: N/A_____

15. **Disclaimer.** Buyer and Seller acknowledge that they have not relied upon any advice, representations or statements of Brokers other than what is expressly included in this Agreement and waive and shall not assert any claims against Brokers involving the same. Buyer and Seller agree that Brokers shall not be responsible to advise Buyer and Seller on any matter including but not limited to the following: any matter which could have been revealed through a survey, title search or inspection of Property; the condition of Property, any portion thereof, or any item therein; building products and construction techniques; the necessity or cost of any repairs to Property; mold; hazardous or toxic materials or substances; termites and other wood destroying organisms; the tax or legal consequences of this Agreement and transaction; the availability and cost of utilities or community amenities; the appraised or future value of Property; any condition(s) existing off Property which may affect Property; the terms, conditions and availability of financing; and the uses and zoning of Property whether permitted or proposed. Buyer and Seller acknowledge that Brokers are not experts with respect to the above matters and that, if any of these matters or any other matters are of concern to them, they should seek independent expert advice relative thereto. Buyer and Seller acknowledge that Brokers shall not be responsible to monitor or supervise any portion of any construction or repairs to Property and that such tasks clearly fall outside the scope of real estate brokerage services.

16. **Assignment.** *[Select one]*
   ☒ A. Buyer may not assign this Agreement to any legal entity without written permission from the Seller. Any such approved assignment shall not release the original Buyer from any liabilities or obligations herein. Notice of such assignment shall be delivered to the Seller within 2 (two) working days of execution, but not less than 5 (five) days from closing.
   ☐ B. This Agreement may be assigned by the Buyer to any legal entity of which the Buyer owns at least 25% and must have written permission of the Seller to do so. Such permission shall not be unreasonably denied.

17. **Notices.**
   A. **All Notices Must Be In Writing.** All notices, including but not limited to offers, counteroffers, acceptances, amendments, demands, notices of termination and other notices, required or permitted hereunder shall be in writing, signed by the party giving the notice. It is the intent of the parties that the requirements of this Notice paragraph shall apply even prior to this Agreement becoming binding.
   B. **Method of Delivery of Notice.** Subject to limitations and conditions set forth herein, notices may only be delivered: (1) in person; (2) by an overnight delivery service, prepaid; (3) by facsimile transmission (FAX); (4) by registered or certified U.S. mail, prepaid, return receipt requested; or (5) by e-mail.
   C. **When Notice Is Deemed Received.** Except as may be provided herein, a notice shall not be deemed to be given, delivered or received until it is actually received by the party to whom the notice was intended or that person's authorized agent. Notwithstanding the above, a notice sent by FAX shall be deemed to be received by the party to whom it was sent as of the date and time it is transmitted to either the party or the party's authorized agent provided that the sending FAX produces a written confirmation showing the correct date and the time of the transmission and the telephone number referenced herein to which the notice should have been sent.
   D. **When Notice to Broker Is Notice to Broker's Client.** Except in transactions where the Broker is practicing designated agency, notice to the Broker or the affiliated licensee of Broker representing a party in the transaction shall for all purposes herein be deemed to be notice to that party. Said Broker and affiliated licensee shall be authorized agents of the party for the purpose of receiving notice. In any transaction where the Broker is practicing designated agency, only notice to the affiliated licensee designated by Broker to represent the party in the transaction shall be notice to that party. Personal delivery of notice may only be delivered to the party intended to receive the same or that party's authorized agent.

E. **Notice by Fax or E-Mail to a Broker or Affiliated Licensee of a Broker.** Notices by fax or e-mail to a Broker or the affiliated licensee of a Broker may only be sent to the e-mail address or fax number, if any, of the Broker or the affiliated licensee of the Broker set forth in the Broker/Licensee Contact Information section of the signature page of this Agreement or subsequently provided by the Broker or the affiliated licensee of Broker following the notice procedures set forth herein. If no fax number or e-mail address is included in the Broker/Licensee Contact Information section of the signature page of this Agreement (or is subsequently provided by the Broker or the affiliated licensee of Broker following the notice procedures) then notice by the means of communication not provided shall not be valid for any purpose herein. Notice to a Broker or the affiliated licensee of Broker who is working with, but not representing a party, shall not be deemed to be notice to that party. Any party sending notice by FAX or email shall send an original copy of the notice if so requested by the other party. A faxed or emailed signature of a party shall constitute an original signature binding upon that party.

F. **Notice to Unrepresented Party.** A party who is not represented by a Broker in the transaction may receive notices by Fax or e-mail at the e-mail address or fax number, if any, of the party set forth below or at such other fax number or e-mail address as the party may provide following the notice procedures set forth herein. If no e-mail address or fax number is provided for below, or is subsequently provided by the party following the notice procedures set forth herein, then notice through the means of communication not provided shall not be valid for any purpose herein.

| Unrepresented Buyer: | Unrepresented Seller: |
|---|---|
| Fax No. _____ N/A _____ | Fax No. _____ N/A _____ |
| E-Mail Address: _____ N/A _____ | E-Mail Address: _____ N/A _____ |

**18. Default.**
In the event of a default of this Agreement by Buyer or Seller, the non-defaulting party may pursue any and all remedies available at law or in equity relative to the default. In the event this Agreement is terminated by Seller due to the default of Buyer, Holder shall offer the earnest money to Seller, by check, which if accepted and deposited by Seller, shall constitute liquidated damages in full settlement of all claims of Seller against Buyer. The parties agree that such liquidated damages shall not be a penalty but are instead a reasonable preestimate of Seller's actual damages, which damages are difficult to ascertain. Nothing herein shall prevent the Seller from declining any tender of the earnest money by the Holder. In such event, Holder may disburse the earnest money to Buyer upon a reasonable interpretation of the Agreement as set forth elsewhere herein.

Notwithstanding any other provision to the contrary contained in either this Agreement or in any brokerage engagement agreement entered into by Buyer or Seller with any real estate broker, in the event the sale is not closed because of the failure or refusal of Buyer or Seller to perform any of their respective obligations, the defaulting party shall pay the Broker(s) the full commission the Broker(s) would have been entitled to under the Listing Agreement (incorporated herein by reference) had the transaction closed. The Selling Broker and Listing Broker may jointly or independently pursue the defaulting party for their respective portions of the commission. If the defaulting party has not entered into a brokerage engagement agreement with either the Listing Broker or Selling Broker herein or such agreement is no longer in full force and effect as of the Binding Agreement Date, this Agreement shall create a separate cause of action on the part of the Brokers herein against the defaulting party. In the event the defaulting party has entered into a brokerage engagement agreement with either the Listing Broker or Selling Broker that is in full force and effect as of the Binding Agreement Date, this section of the Agreement shall serve to amend such brokerage engagement agreement and shall control over and supersede any conflicting or inconsistent provisions contained therein. The consideration for the rights granted herein to Broker(s) shall be the mutual promises set forth in this Agreement and other good and valuable consideration the receipt and sufficiency of which is acknowledged by Buyer and Seller. The rights granted herein to Broker(s) shall survive the termination of this Agreement. Notwithstanding the above, the payment to the Broker(s) by the defaulting party of the full commission(s) referenced above shall relieve the defaulting party of any other commission obligation owed to the Broker(s).

**19. Other Provisions.**
A. **Warranties Transfer:** Seller agrees to transfer to Buyer, at closing, subject to Buyer's acceptance thereof (and at Buyer's expense, if there is any cost associated with said transfer), Seller's interest in any existing manufacturer's warranties, service contracts, termite treatment and/or repair guarantee and/or other similar warranties which, by their terms, may be transferable to Buyer.
B. **Repairs:** All agreed upon repairs and replacements shall be performed in a good and workmanlike manner prior to closing.
C. **Binding Effect, Entire Agreement, Modification, Assignment:** This Agreement constitutes the sole and entire agreement between all of the parties, supersedes all of their prior written and verbal agreements and shall be binding upon the parties and their successors, heirs and permitted assigns. No representation, promise or inducement not included in this Agreement shall be binding upon any party hereto. This Agreement may not be amended, modified or waived except upon the written agreement of Buyer and Seller. This Agreement may not be assigned by Buyer except with the written agreement of Seller. Any assignee shall fulfill all the terms and conditions of this Agreement.
D. **Survival of Agreement:** The following shall survive the closing of this Agreement: (1) the obligation of a party to pay a real estate commission; (2) any warranty of title; and (3) any obligations which the parties herein agree shall survive the closing or may be performed or fulfilled after the closing.
E. **Governing Law and Interpretation:** This Agreement may be signed in multiple counterparts each of which shall be deemed to be an original and shall be interpreted in accordance with the laws of the State of Georgia. No provision herein, by virtue of the party who drafted it, shall be interpreted less favorably against one party than another. All references to time shall mean the time in Georgia.
F. **Time of Essence:** Time is of the essence of this Agreement.
G. **Terminology:** As the context may require in this Agreement: (1) the singular shall mean the plural and vice versa; and (2) all pronouns shall mean and include the person, entity, firm, or corporation to which they relate.
H. **Binding Agreement Date:** The Binding Agreement Date in this Agreement shall be the date when the party making the last offer, or the Broker (except in a designated agency transaction) or affiliated licensee of Broker representing that party as a client, receives notice that the offer has been accepted. This party (or the Broker or affiliated licensee representing this party as a client) shall fill in the Binding Agreement Date below and promptly give notice of this date to the other party. Filling in the Binding Agreement Date shall not be deemed to be a counteroffer.

I. **Responsibility to Cooperate:** All parties agree to take all actions and do all things reasonably necessary to fulfill the terms and conditions of this Agreement in good faith and in a timely manner. Buyer and Seller shall execute and deliver such certifications, affidavits, and statements as are required at closing to meet the requirements of any lender(s) and of federal and state law.

J. **GAR Forms:** The Georgia Association of REALTORS®, Inc. ("GAR") makes certain standard real estate forms available to its members. These GAR forms are frequently provided to the parties in real estate transactions by the REALTORS® with whom they are working. No party is required to use any GAR form. Since these forms are generic and written with the interests of multiple parties in mind, they may need to be modified to meet the specific needs of the parties using them. If any party has any questions about his or her rights and obligations under any GAR form he or she should consult an attorney. The parties hereto agree that the GAR forms may only be used in accordance with the licensing agreement of GAR. While GAR forms may be modified by the parties, no GAR form may be reproduced with sections removed, altered or modified unless the changes are visible on the form itself or in a stipulation, addendum, exhibit or amendment thereto.

20. **Exhibits and Addenda.** All exhibits and/or addenda attached hereto, listed below, or referenced herein are made a part of this Agreement. If any such exhibit or addendum conflicts with any preceding paragraph, said exhibit or addendum shall control:
    - [X] Exhibit "A" Legal Description
    - [ ] Exhibit "B" Due Diligence Materials
    - [ ] Exhibit "C" Addition to Seller's Closing Documents
    - [ ] Exhibit "D" Seller's Warranties and Representations
    - [ ] Survey Resolution Exhibit
    - [ ] Other _____.

**SPECIAL STIPULATIONS:** The following Special Stipulations, if conflicting with any exhibit, addendum, or preceding paragraph (including any changes thereto made by the parties), shall control:

#1. SELLER / TRUSTEE WILL PROVIDE PURCHASHER WITH A CLEAR TITLE FREE FROM ALL LIENS AT CLOSING.

#2. THE CURRENT OWNER NEEDS TO VACATE THE PROPERTY PRIOR TO CLOSING AND REMOVE ALL PERSONAL PROPERTY PRIOR TO CLOSING. IN THE EVENT THE PREVIOUS OWNER HAS NOT REMOVED ALL PERSONAL PROPERTY, SELLER / TRUSTEE WILL REIMBURSE FOR ALL EXPENSES RELATED TO THE REMOVAL OF SAID PERSONAL PROPERTY.

#3. SELLER / TRUSTEE WILL PAY INTERNATIONAL PROPERTIES A COMMISSION OF 3% OF THE AGREED SALES PRICE.

[ ] (Mark box if additional Special Stipulations are attached.)

**Time Limit:** The terms of this Agreement shall constitute an offer ("Offer") which shall be open for acceptance until __12:00__ o'clock __P__.m. on the date of _____December 15, 2009_____.

**Acceptance:** This Offer is hereby accepted, without change, at _____ o'clock ____.m. on the date of _____.

_____
Buyer's Signature

_____WAKLEY PROPERTIES LLC._____
Print or Type Name

_____
Seller's Signature

_____Benjamin R. Roach, Trustee_____
Print or Type Name

_____
Buyer's Signature

_____
Print or Type Name

_____
Seller's Signature

_____
Print or Type Name

_____INTERNATIONAL PROPERTIES_____
Selling Broker

_____
Listing Broker

By: _____
Broker or Broker's Affiliated Licensee

By: _____
Broker or Broker's Affiliated Licensee

_____SEAN C. BROOKS_____
Print or Type Name

_____
Print or Type Name

| 430 | H-18721 |
| --- | --- |
| MLS Office Code | Brokerage Firm License Number |

| | |
| --- | --- |
| MLS Office Code | Brokerage Firm License Number |

Multiple Listing Number _____N/A_____

**Selling Broker/Licensee Contact Information:**

Phone# _____912-596-9009_____

Fax# _____912-354-3464_____

E-Mail _____SEANBROOKS@COMCAST.NET_____

_____167938_____
Selling Agent's Georgia Real Estate License Number

**Listing Broker/Licensee Contact Information:**

Phone# _____

Fax# _____

E-Mail _____

_____
Listing Agent's Georgia Real Estate License Number

**Binding Agreement Date:** The Binding Agreement Date in this transaction is the date of _____ and has been filled in by _____.

Copyright© 2009 by Georgia Association of REALTORS®, Inc.    CF2, Commercial Purchase and Sale Agreement, Page 7 of 7 05/06/09

Form generated by: TrueForms™   www.TrueForms.com   800-499-9612



# EXHIBIT "A" TO
# COMMERCIAL PURCHASE AND SALE AGREEMENT

## Legal Description
[Insert legal description]

ALL THOSE CERTAIN LOTS, TRACTS OR PARCEL OF LAND SITUATE, LYING AND BEING IN CHATHAM COUNTY, GEORGIA, AND KNOWN AND DESIGNATED ON A MAP OF SHANGRI-LA MADE BY ROBERT D GIGNILLIAT JR, CHATHAM COUNTY SURVEYOR, MARCH 1944, WHICH IS RECORDED IN THE OFFICE OF THE CLERK OF THE SUPERIOR COURT OF CHATHAM COUNTY, GEORGIA, IN SUBDIVISION MAP BOOK "A" PAGE 72 AS LOTS 9 AND 10, SAID LOTS BEING CONTIGUOUS AND HAVING A COMBINED FRONTAGE ON THE WEST SIDE OF THE WHITE BLUFF ROAD OF 205.25 FEET WITH A DEPTH ALONG THE NORTHERN LINE OF LOT 9 OF 312.8 FEET AND DEPTH ALONG THE SOUTHERN LINE OF LOT 10 OF 318.2 FEET AND BEING BOUNDED AS WHOLE ON THE NORTH BY LOT 8 OF SAID SUBDIVISION, ON THE EAST BY THE WHITE BLUFF ROAD, ON THE SOUTH BY THE BOUNDARY LINE OF SAID SUBDIVISION AND MAGNOLIA GARDENS, AND ON THE WEST BY LOT 12 OF SAID SUBDIVISION. Said property being known as 10515 White Bluff Road, Savannah, GA 31406, according to the present numbering system in Chatham County.

Buyer's Initials _____/_____    Seller's Initials _____/_____

Copyright© 2009 by Georgia Association of REALTORS®, Inc.    CF3, Exhibit "A" Legal Description 01/01/09

Form generated by: TrueForms™   www.TrueForms.com   800-499-9612

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

IN THE MATTER OF:           )
                            )
JOHN RAYMOND GIDDENS        ) CHAPTER 7 CASE NO.: 09-41686 –LWD
                            )
            DEBTOR          )

## ORDER CONFIRMING SALE

This matter came before the Court on _____, 2010, for a hearing upon the application of **BENJAMIN R. ROACH,** trustee, for leave to sell certain real property of this estate.

The Court has considered the matter and no objection to the proposed sale having been filed as required by the Order and Notice of Sale dated _____, 2010, and good cause appearing why the sale as proposed should be approved, it is

**ORDERED** that the application be and the same is hereby approved. The trustee may proceed to sell the real property described as:

> ALL THOSE CERTAIN LOTS, TRACTS OR PARCEL OF LAND SITUATE, LYING AND BEING IN CHATHAM COUNTY, GEORGIA, AND KNOWN AND DESIGNATED ON A MAP OF SHANGRI-LA MADE BY ROBERT D GIGNILLIANT JR, CHATHAM COUNTY SURVEYOR, MARCH 1944, WHICH IS RECORDED IN THE OFFICE OF THE CLERK OF THE SUPERIOR COURT OF CHATHAM COUNTY, GEORGIA, IN SUBDIVISION MAP BOOK "A" PAGE 72 AS LOTS 9 AND 10, SAID LOTS BEING CONTIGUOUS AND HAVING A COMBINED FRONTAGE ON THE WEST SIDE OF THE WHITE BLUFF ROAD OF 205.25 FEET WITH A DEPTH ALONG THE NORTHERN LINE OF LOT 9 OF 312.8 FEET AND DEPTH ALONG THE SOUTHERN LINE OF LOT 10 OF 318.2 FEET AND BEING BOUNDED AS WHOLE ON THE NORTH BY LOT 8 OF SAID SUBDIVISION, ON THE EAST BY THE WHITE BLUFF ROAD, ON THE SOUTH BY THE BOUNDARY LINE OF SAID SUBDIVISION AND MAGNOLIA GARDENS, AND ON THE WEST BY LOT 12 OF SAID SUBDIVISION. Said property being known as 10515 White Bluff Road, Savannah, GA 31406, according to the present numbering system in Chatham County.

to Wakley Properties LLC, for the sum of $350,000.00, cash. Such sale shall be free and clear of liens with all valid liens attaching to the proceeds.

**IT IS FURTHER ORDERED** that the amount ad valorem taxes claimed by Chatham County, Georgia, and/or the City of Savannah, Georgia, shall be escrowed by the closing attorney at closing, pending a determination of the exact amount of taxes owing, and further order of this Court.

**DONE and ORDERED** at Savannah, Georgia, this _____ day of _____, 2010.

_____
LAMAR W. DAVIS, JR.
CHIEF UNITED STATES BANKRUPTCY JUDGE
UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF GEORGIA

Prepared by:
Kathleen Horne
INGLESBY, FALLIGANT, HORNE,
COURINGTON & CHISHOLM, P.C.
Post Office Box 1368
Savannah, Georgia 31402-1368
(912) 232-7000

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

IN THE MATTER OF:            )
                             )
JOHN RAYMOND GIDDENS         ) CHAPTER 7 CASE NO.: 09-41686 –LWD
                             )
           DEBTOR            )

## CERTIFICATE OF SERVICE

This is to certify that I have this date served the foregoing **APPLICATION OF TRUSTEE FOR LEAVE TO SELL REAL PROPERTY AT PRIVATE SALE** by CM/ECF or by depositing same in the United States Mail with sufficient postage affixed thereon, to those addressed below:

Matthew E. Mills
Asst. U.S. Trustee
222 W. Oglethorpe Ave.
Suite 302
Savannah, GA 31401

BB&T Loan Services
MC:100-50-02-57
P.O. Box 2306
Wilson, NC 27894

James L. Drake, Jr.
P.O. Box 9945
Savannah, GA 31412

John Raymond Giddens
10515 White Bluff Road
Savannah, GA 31406

Queensborough National Bank & Trust
P.O. Box 467
Louisville, GA 30434

This the 17 day of December, 2009.

_____
Kathleen Horne,
Attorney for the Trustee

INGLESBY, FALLIGANT, HORNE, COURINGTON & CHISHOLM, P.C.
Post Office Box 1368
Savannah, Georgia 31402-1368
(912) 232-7000